FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TANJA O.,[1]<br><br>     Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, the Commissioner of Social Security,<br><br>     Defendant. | No. 4:19-CV-5222-EFS<br><br><br>**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

   Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Tanja O. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly determining that Plaintiff did not have a severe mental impairment, 2) improperly weighing the medical opinions, 3) discounting Plaintiff's symptom reports, and 4) improperly assessing

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 13 & 14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 13, and grants the Commissioner's Motion for Summary Judgment, ECF No. 14.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of January 22, 2017.[18] Her claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Lori Freund.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2022;

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 15 & 37.

[19] AR 96 & 110.

[20] AR 35-84.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Plaintiff had not engaged in substantial gainful activity since January 22, 2017, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: persistent depressive disorder (formerly dysthymia characterized with depression with anxious distress);

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  > The [Plaintiff] can have superficial to occasional interaction with the public and coworkers, but she would work best with no tandem tasks being performed (i.e. working individually). Further, the [Plaintiff] cannot perform fast-paced production work or timed-paced work.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as housekeeping, cleaner; mailroom clerk; and collator.[21]

When assessing the medical-opinion evidence, the ALJ gave:

---

[21] AR 17-28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- great weight to the opinions of State agency psychological consultants;

- substantial weight to the opinion of Lynne Jahnke, M.D.;

- partial weight to the opinion of Richard Anderson, Ph.D.;

- some weight to the opinion of Philip Gibson, Ph.D.;

- little weight to the opinion of Katie Fox, MSW, LICSW;

- little to no weight to the opinion of James Daniel Vaughn, M.D.; and

- no weight to the opinions that predated Plaintiff's filing date, including the opinion of Debbie Schuening, LCSW.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[23] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[24] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[22] AR 21.

[23] AR 1.

[24] 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

evidence or is based on legal error."[25] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[27] The Court considers the entire record as a whole.[28]

Further, the Court may not reverse an ALJ decision due to a harmless error.[29] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[28] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[29] *Molina*, 674 F.3d at 1111.

1

2

nondisability determination."[30] The party appealing the ALJ's decision generally bears the burden of establishing harm.[31]

3

### IV.    Analysis

4

**A.    Step Two (Severe Impairment): Plaintiff fails to establish error.**

5

6

Plaintiff contends the ALJ erred at step two by failing to identify her mental impairments as severe impairments.

7

8

9

10

11

12

13

14

15

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[32] To show a severe mental impairment, the claimant must first prove the existence of a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.[33] If a mental impairment is proven, the ALJ then considers whether the medically determinable impairment is severe or not severe. A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no

16

17

18

[30] *Id.* at 1115 (quotation and citation omitted).

19

20

[31] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

21

[32] 20 C.F.R. § 416.920(c).

22

[33] *Id.* § 416.921 (recognizing the claimant's statement of symptoms alone will not suffice).

23

more than a minimal effect on an individual's ability to work."[34] Basic mental work abilities include understanding, carrying out, and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations.[35]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[36] And "[g]reat care should be exercised in applying the not severe impairment concept."[37]

At step two, the ALJ determined Plaintiff had the severe impairment of persistent depressive disorder (formerly dysthymia characterized with depression with anxious distress). The ALJ acknowledged Plaintiff's medically determinable mental impairments included postpartum depression, postpartum anxiety, ADHD/ADD, PTSD, mood disorder, bipolar disorder, and generalized anxiety disorder, but determined they were not severe.[38]

Psychological medical expert Richard Anderson, Ph.D. testified at the administrative hearing. Dr. Anderson opined that PTSD, mood disorder, bipolar disorder, and generalized anxiety disorder were not fully supported by the record.

---

[34] SSR 85-28 at *3.

[35] 20 C.F.R. § 416.921.

[36] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[37] SSR 85-28.

[38] AR 18.

The ALJ accepted Dr. Anderson's testimony determining Plaintiff's PTSD, mood disorder, bipolar disorder, and generalized anxiety disorder are not established as medically determinable impairments.[39] Plaintiff argues the ALJ erred by crediting Dr. Anderson's non-examining opinion over the opinions of treating physician James Daniel Vaughn, M.D. and examining physician Philip. Gibson, Ph.D.[40]

The opinion of a non-examining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.[41] Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion.[42] Thus, case law requires not only an opinion from the consulting physician but also substantial evidence, independent of that opinion

---

[39] AR 18.

[40] ECF No. 13 at 14.

[41] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[42] *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).

which supports the rejection of contrary conclusions by examining or treating physicians.[43]

The ALJ accepted Dr. Anderson's testimony regarding Plaintiff's PTSD, mood disorder, bipolar disorder, and generalized anxiety disorder because Dr. Anderson reviewed the entire medical record and specialized in clinical psychology.[44]

First, an ALJ may give more weight to an opinion that is based on more record review and supporting evidence.[45] That Dr. Anderson was more familiar with Plaintiff's longitudinal case record was a legitimate and specific reason supported by substantial evidence to give more weight to Dr. Anderson's opinion than to Dr. Vaughn's and Dr. Gibson's opinions.

---

[43] *Andrews*, 53 F.3d at 1039.

[44] AR 18.

[45] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews*, 53 F.3d at 1041 (same).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

Second, a doctor's area of expertise is relevant to the determination of how much weight the doctor's opinion should be given.[46] Dr. Vaughn is Plaintiff's primary care provider and the record does not show that he has specialized expertise in psychiatry.[47] However, Dr. Gibson is a clinical psychologist and therefore possess specialized expertise.[48] Therefore, this was a legitimate reason to give more weight to Dr. Anderson's opinion than to Dr. Vaughn's opinion, but not Dr. Gibson's opinion.[49]

Any error at step two is harmless because the ALJ resolved step two in Plaintiff's favor by finding severe impairments and continued the sequential analysist through step five while considering Plaintiff's mental-health symptoms to the extent they were consistent with the record. Also, the ALJ considered Plaintiff's non-severe impairments when formulating the RFC.[50]

---

[46] *See* 20 C.F.R. § 416.927(c)(5); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[47] AR 42.

[48] AR

[49] The Court notes Plaintiff does object to the ALJ's assignment of some weight to Dr. Gibson's opinion.

[50] AR 18 ("any minimal limitations attributable to [Plaintiff's] non-severe impairments have been accommodated by the residual functional capacity assessment").

**B.    Medical Opinions: Plaintiff fails to establish error.**

Plaintiff challenges the ALJ's assignment of little to no weight to James Daniel Vaughn, M.D.'s opinion.

1.    <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[51] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[52]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[53] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by

---

[51] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[52] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[53] *Lester*, 81 F.3d at 830.

substantial evidence, and the opinion of an "other" medical source[54] may be rejected for specific and germane reasons supported by substantial evidence.[55] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[56]

As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

2. Dr. Vaughn

Dr. Vaughn treated Plaintiff from 2012 to June 2015.[57] On February 1, 2019, Dr. Vaughn completed a medical report.[58] Dr. Vaughn diagnosed Plaintiff with Bipolar II, ADHD, and Dysthymic Disorder. Dr. Vaughn opined that working regularly and on a continuous basis would cause Plaintiff's conditions to

---

[54] See 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[55] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[56] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[57] AR 757.

[58] AR 757-59.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

deteriorate because the additional stress of the job would escalate Plaintiff's symptoms. Based on these mental limitations, Dr. Vaughn opined that Plaintiff would likely miss four or more days of work per month because Plaintiff "is unable to function normally when her symptoms are not controlled."[59] Dr. Vaughn also opined Plaintiff was unable to lift at least two pounds or stand and/or walk.[60]

The ALJ discounted Dr. Vaughn's testimony because 1) it was inconsistent with the medical records, and 2) inconsistent with his progress notes.[61]

First, the ALJ's finding that Dr. Vaughn's opinion was inconsistent with the longitudinal medical record is rational and supported by substantial evidence. Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[62] Here, the medical record reflects that Plaintiff's mental status examinations and observations had been unremarkable, with her mood, affect, speech, and behavior within normal limits and her recent and remote

---

[59] AR 758.

[60] *Id.*

[61] AR 26.

[62] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

memory intact.[63] In addition, the records show that Plaintiff appeared to improve with treatment and was stable on medication.[64] That the longitudinal medical record was inconsistent with Dr. Vaughn's opinion was a clear and convincing reason to discount the opinion.

Second, the ALJ's finding that Dr. Vaughn's treatment notes did not support his opined restrictions is a rational finding supported by substantial evidence. The

---

[63] AR 356 (mood euthymic, affect normal range and modulation, and recent and remote memory intact); AR 394, 414, 434 (mood elated/euphoric, anxious and irritable, affect congruent with mood, and recent and remote memory intact); AR 616 ("[Plaintiff possesses the clear ability to reason and understand. [Plaintiff's] immediate, recent and remote memory are all intact. [Plaintiff] is currently not self-isolating, with friend contact . . . does not involve herself in social events much but sees others or speaks with them often . . . [and] has adaptive skills."); & AR 991 (affect congruent, mood euthymic).

[64] AR 614 (reports medication and counseling helpful); AR 688 (reports "significant stabilization" of moods in taking Lamictal and Adderall), AR 675, 678, 681, 684 687, 690 (status stable since last session); AR 973 ( reports mood significantly improved and less anxiety, and denied negative thinking); AR 986 ("Overall [Plaintiff] is doing well and is coping with her stressors well."); & AR 995 ("Continuing to treat ADHD and mood issues. [Plaintiff] appears to be very stable.").

treatment notes support that Plaintiff's mental impairments were stable and controlled with medication treatment.[65] That Dr. Vaughn's opined check-box restrictions were not supported by his treatment notes was a clear and convincing reason to discount Dr. Vaughn's opinion.[66]

Plaintiff fails to establish that the ALJ erred by discounting Dr. Vaughn's opinion.

**C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[67] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

---

[65] *See* AR 902 ("Psychiatric/Behavior: Negative for decreased concentration, dysphoric mood, sleep disturbance and suicidal ideas. The patient is not nervous/anxious.") & AR 903 ("Bipolar 2 – stable," Depression with anxiety – stable," "PTSD – stable," and "ADHD – stable").

[66] *See Bray*, 554 F.3d at 1228; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

[67] *Molina*, 674 F.3d at 1112.

claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[68] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, improved with treatment, and inconsistent with activities of daily living.[69]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[70] However, objective medical evidence is a relevant factor in

---

[68] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[69] AR 21-24.

[70] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. § 404.1502(f). In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

*Id.* § 404.1502(g).

considering the severity of the reported symptoms.[71] As discussed above, in contrast to Plaintiff's reported disabling symptoms, the medical record reflects that Plaintiff's mental status examinations and observations had been unremarkable with her mood, affect, speech, and behavior within normal limits and her recent and remote memory intact.[72] This was a relevant factor for the ALJ to consider.

That a claimant's conditions improved with treatment is also a relevant consideration for the ALJ when assessing the claimant's reported symptoms and, on this record, the ALJ's finding that Plaintiff's symptoms improved with treatment is supported by substantial evidence.[73]

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with her daily living.[74] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[75] The ALJ highlighted that Plaintiff could clean her

---

[71] *Id.*

[72] AR 356, 394, 414, 434, 616, & 991.

[73] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement); *see* AR 614, 688, 675, 678, 681, 684, 687, 690, 973, 986, & 995.

[74] AR 24.

[75] *Molina*, 674 F.3d at 1113.

home, cook, and shop for groceries.[76] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved in relatively short periods of time and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[77]

Because the ALJ articulated two other supported grounds for discounting Plaintiff's reported symptoms—inconsistent with the objective medical evidence and improvement with treatment—the ALJ's decision to discount Plaintiff's reported symptoms is upheld on this record.

In summary, Plaintiff fails to establish the ALJ consequentially erred by discounting Plaintiff's symptom reports.

**D.   Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by her providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[78]

---

[76] AR 24 & 616.

[77] *Molina*, 674 F.3d at 1112-13.

[78] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 7th  day of August 2020.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge